UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE ROBINSON**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MELISSA JACKSON, ELIZABETH RIVERA,
NANETTE BARNES, SAMANTHA LACEY, and
NICOLE ANTHONY,

**'10 CIV 00499**

Civil Action No.:

Plaintiffs,

**COMPLAINT**

- against -

**JURY TRIAL DEMANDED**

WAL-MART STORES, INC.

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiffs, by their attorneys, ROSENBAUM FARIA, LLP, complaining of defendant,

WAL-MART STORES, INC. ("defendant" or "Walmart"), alleges as follows:

## INTRODUCTION

1.     This is an action to remedy violations of the rights of plaintiffs under the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. Section 2000e, et. seq., and New York State

Executive Law Section 296 (the "State Human Rights Law" or the "NYSHRL"). The plaintiffs

herein are victims of illegal discrimination due to (a) sexual harassment in employment, (b)

hostile work environment, as well as (c) retaliation.

## JURISDICTION AND VENUE

2.     Jurisdiction of this court is invoked pursuant to Section 706(f) of Title VII, 42

U.S.C. Section 2000e-5(f), and 28 U.S.C. Section 1331 and 1343(4).  Further, this court has

supplemental jurisdiction over the state claims for violation of the State Human Rights Law

pursuant to 28 U.S.C. Section 1367.

3.      Venue lies in the United States District Court for the Southern District of New York in that a "substantial part of the events or omissions giving rise" to the claims herein asserted occurred in the Southern District of New York, within the meaning of 28 U.S.C. Section 1391(b)(2), and in that defendant "may be found" in the Southern District of New York within the meaning of 28 U.S.C. Section 1391(b)(3).

4.      On or about July 14, 2009, plaintiff MELISSA JACKSON (hereinafter "Jackson") filed a timely charge of sex discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), as required by 42 U.S.C. Section 2000e-5(e). On October 28, 2009, JACKSON received a Notice of Right to Sue, issued by the EEOC, a copy of which is attached hereto as Exhibit A. This complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

5.      On or about July 14, 2009, plaintiff ELIZABETH RIVERA (hereinafter "Rivera") filed a timely charge of sex discrimination with the EEOC, as required by 42 U.S.C. Section 2000e-5(e). On October 28, 2009, RIVERA received a Notice of Right to Sue, issued by the EEOC, a copy of which is attached hereto as Exhibit B. This complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

6.      On or about July 14, 2009, plaintiff NANETTE BARNES (hereinafter "Barnes") filed a timely charge of hostile work environment with the EEOC, as required by 42 U.S.C. Section 2000e-5(e). On October 28, 2009, BARNES received a Notice of Right to Sue, issued by the EEOC, a copy of which is attached hereto as Exhibit C. This complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

7.     On or about October 9, 2009, plaintiff SAMANTHA LACEY (hereinafter "Lacey") filed a timely charge of sex discrimination and hostile work environment with the EEOC, as required by 42 U.S.C. Section 2000e-5(e).  On December 29, 2009, LACEY received a Notice of Right to Sue, issued by the EEOC, a copy of which is attached hereto as Exhibit D. This complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

8.     Plaintiff NICOLE ANTHONY (hereinafter "Anthony") joins this complaint pursuant to the single filing rule which permits non-filing individuals to join an original action with charging parties as long as the charges relied on give some indication that the grievance affects a group of individuals including those who seek to piggyback.  See Holowecki v. Federal Express Corp., 440 F.3d 558 (2d Cir. 2006) aff'd on other grounds, 552 U.S. __, 128 S. Ct. 1147 (2008); see also Tolliver v. Xerox Corp., 918 F.2d 1052 (2d Cir. 1990) (holding that the timely filing of a charge by named plaintiffs in an individual lawsuit satisfies the charge filing obligation of non-filing individuals provided the claims arise out of similar discriminatory treatment in the same general time frame).

## PARTIES

9.     Plaintiff, Ms. Jackson, is a citizen of the State of New York and resides at 3 Burton Avenue, Monticello, New York 12701.  Jackson has worked as an overnight stock clerk at Walmart since 1999.

10.    At all times relevant herein, Jackson was an "employee" of Walmart within the meaning of 42 U.S.C. § 2000e (f).

11.     Plaintiff, Ms. Rivera, is a citizen of the State of New York and resides at 12 Terry Lane, Apartment 99, Monticello, New York 12701.  Rivera has worked as an overnight stock clerk at Walmart since August 2008.

12.     At all times relevant herein, Rivera was an "employee" of Walmart within the meaning of 42 U.S.C. § 2000e (f).

13.     Plaintiff, Ms. Barnes, is a citizen of the State of New York and resides at 29 York Avenue, Unit 3, Monticello, New York 12701.  Barnes has worked as an overnight stock clerk at Walmart since May 2008.

14.     At all times relevant herein, Barnes was an "employee" of Walmart within the meaning of 42 U.S.C. § 2000e (f).

15.     Plaintiff, Ms. Lacey, is a citizen of the State of New York and resides at 1097 State Route 52, Unit 1, Loch Sheldrake, New York 12758.  Lacey has worked in the pharmacy department at Walmart since September 2008.

16.     At all times relevant herein, Lacey was an "employee" of Walmart within the meaning of 42 U.S.C. § 2000e (f).

17.     Plaintiff, Ms. Anthony, is a citizen of the State of New York and resides at 1114 Route 52, Loch Sheldrake, New York 12759.  Anthony served as a cashier at Walmart from 2001 through 2003, and again from 2003 through May 2007, when defendant wrongfully terminated her employment.

18.     At all times relevant herein, Anthony was an "employee" of Walmart within the meaning of 42 U.S.C. § 2000e (f).

19.     Upon information and belief, defendant Walmart is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located

at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Defendant is presently doing business in the State of New York, with an office and place of doing business located at 41 Anawana Lake Road, Monticello, New York 12701.

20.     Upon information and belief, defendant is in the business of retailing.

21.     Upon information and belief, defendant is engaged in an industry affecting commerce as defined in Section 2000e (g).

22.     Upon information and belief, defendant is an "employer" within the meaning of 42 U.S.C. § 2000e (b).

23.     Upon information and belief, defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

24.     Upon information and belief, defendant is an "employer" within the meaning of the State Human Rights Law.


## FACTS

25.     Plaintiff Jackson has been employed by defendant as an overnight stock clerk since 1999.

26.     Plaintiff Jackson works at defendant's location of business in Monticello, New York.

27.     Plaintiff Jackson is routinely assigned to the pharmacy or health and beauty section during her shift.

28.     Throughout plaintiff Jackson's employment, she has witnessed a continuing pattern of illegal sexual harassment at Walmart against a broad class of women so severe and

pervasive in that it creates an abusive work environment and drastically alters the privileges of employment.

29.     On numerous occasions during Jackson's employment, defendant's employee, Orlando (last name unknown), routinely approached Jackson when no other employees were nearby.

30.     Despite Jackson's repeated efforts to ask Orlando to leave her alone, Orlando continued to approach her in an uncomfortable, sexual manner.

31.     On or about February 7, 2009, Orlando approached Jackson while she was working in the pharmacy department, and while talking with Jackson, continued to move inappropriately close to her.

32.     On or about February 7, 2009, Orlando placed his hands on Jackson's buttocks.

33.     As a result of Orlando's illegal and harassing behavior, Jackson became severely uncomfortable and embarrassed, and proceeded to exit the aisle.

34.     On or about March 7, 2009, defendant's employee Orlando again approached Jackson while she was stocking shelves.  Orlando continued to again move inappropriately close to her, and again placed his hand on Jackson's buttocks.

35.     On or about March 7, 2009, although Jackson demanded that Orlando immediately stop his harassing behavior, he ignored Jackson's request and became increasingly hostile, abusive, offensive, and intimidating toward Jackson.  Orlando followed Jackson to the end of the aisle, started rubbing Jackson's shoulders, and commented, "You sure look good tonight," "Are you mad at me?" and "Hey, what's your problem?"  Jackson responded, "I'm pissed! You can't be touching me!"

36.    Throughout plaintiff Jackson's course of employment, she did advise Orlando that his sexual advances and physical contact were unwelcome.

37.    Throughout plaintiff Jackson's course of employment, Orlando deliberately ignored Jackson's requests to stop touching her.

38.    Plaintiff Jackson complained about Orlando's harassing behavior to plaintiff Barnes.

39.    Plaintiff Jackson reported and complained about Orlando's illegal behavior to defendant's Assistant Manager Steve (last name unknown), stating that "Orlando over in pets just came over to pharmacy and was touching me. He touched my butt. He keeps trying to get real close to me. Orlando has done this twice and you need to do something."

40.    Defendant's Assistant Manager Steve did assure Jackson that he would monitor Orlando for the remainder of Jackson's shift, would have someone watch the security tapes, and would discuss Orlando's actions with the night manager, Andreas (last name unknown).

41.    Upon information and belief, defendant took no steps to investigate plaintiff Jackson's complaint and reports.

42.    On or about March 7, 2009, after Jackson reported Orlando's harassing behavior to Assistant Manager Steve, Orlando did again approach plaintiff Jackson, rubbed her shoulders, and grabbed her buttocks.

43.    Plaintiff Jackson demanded that Orlando stop harassing her, walked away, and again complained about Orlando's harassing behavior to plaintiff Barnes.

44.    Plaintiff Jackson again reported and complained about Orlando's illegal behavior to defendant's Assistant Manager Steve, stating, "This has to stop. He just did it again. I thought you all were going to be watching him. I can't work by that man. He keeps touching me."

45.     Plaintiff Jackson was assured by Assistant Manager Steve that management would conduct an investigation and that she would no longer be required to work in proximity to Orlando.  Assistant Manager Steve also assured Jackson that management would watch the security tapes that morning.

46.     Upon information and belief, defendant took no immediate steps to investigate plaintiff Jackson's complaint and reports.

47.     Upon information and belief, defendant took no action in preventing Orlando from working in proximity to plaintiff Jackson.

48.     Upon information and belief, defendant took no steps to put an immediate halt to the campaign of discriminatory hostility, harassment, humiliation, bullying and terrorizing conduct against plaintiff Jackson.

49.     Plaintiff Jackson grew increasingly uncomfortable, embarrassed, humiliated, and afraid of further harassing incidents while defendant permitted Orlando to continue to work in the proximity of Jackson, despite repeated complaints by Jackson.

50.     On or about March 14, 2009, Jackson's husband, Rodney Mack, also an employee at defendant's store, approached the night manager, Andreas, to ask why Jackson's complaints were not being investigated.

51.     On or about March 14, 2009, Andreas told Rodney, "We are working on it.  You two are not to discuss this with anyone.  These things can take a week or even two-and-a-half weeks."

52.     On or about April 5, 2009, Jackson approached Assistant Manager Steve to ask why no action had been taken to prevent her from working in and around Orlando, expressing her fear and concern that another harassing incident was imminent.  Jackson was told, "Just do your

work.  When we hear something from corporate, we will handle everything.  We faxed them information already.  We have to wait to hear from them."

53.     Throughout plaintiff Jackson's course of employment, she requested that immediate action be taken against Orlando, advising Walmart management of the situation.

54.     Plaintiff Jackson, however, continued to be required to work shifts with Orlando, as well as work in close proximity with him, for more than a month after management was made aware of the illegal touching and sexual contact.

55.     Plaintiff Jackson did continue to question and protest to defendant about the repeated failure to prevent Jackson from working in proximity to Orlando.

56.     Continuing through April 11, 2009, Assistant Manager Steve did assign Jackson to work in the pharmacy department, despite knowing that Orlando was working there and that Jackson was extremely distressed and upset about this placement.

57.     On or about April 11, 2009, Assistant Manger Steve and night manager Andreas failed and refused to provide Jackson with any rationale for the continued refusal of defendant to prevent Jackson from working in and around Orlando. Jackson was only told that they would discuss the situation with her later.

58.     On or about April 12, 2009, night manager Andreas and Assistant Manager Tiffany brought plaintiff Jackson into the management office to inform Jackson that Orlando was finally fired, more than two months after the initial illegal incident.

59.     Immediately thereafter, other Walmart employees began to ridicule Jackson for complaining and "overreacting" about Orlando's behavior.

60.     Defendant's employees continue to repeatedly harass, embarrass, and demean Jackson in the presence of other employees with discriminatory, disparaging remarks such as:

       (a)     "What's your problem, it isn't like you were having sex or something"

       (b)     "Orlando was a nice guy."

       (c)     "Why did you get Orlando fired?"

61.    Defendant's employees, Manager Connie Giordano and Assistant Manager Andreas, while acting in their official capacity on behalf of defendant, also continue to repeatedly verbally harass, embarrass, and demean Jackson and Jackson's husband, Rodney Mack, in the presence of other employees, despite several requests by Jackson and Mack asking them to refrain from such conduct.

62.    Defendant is deliberately engaging in an illegal retaliatory campaign to force Jackson and her husband out of employment, and dissuade them from supporting Jackson's charge of discrimination.

63.    As a result of defendant's illegal retaliation in response to Jackson's participating in the enforcement of the laws that protect individuals against such discrimination and harassment in the workplace, Jackson and Mack are increasingly uncomfortable, embarrassed, humiliated, and afraid of further harassment.

64.    Plaintiff Rivera has been employed by defendant as an overnight stock clerk since August 2008.

65.    Plaintiff Rivera works at defendant's location of business in Monticello, New York.

66.    On several occasions, defendant's employee, Orlando, approached plaintiff Rivera in a sexual, harassing manner, and attempted to sneak up on Rivera from behind.

67.    Throughout plaintiff Rivera's tenure of employment, defendant's employee Orlando stood uncomfortably close to Rivera, staring at Rivera while she completed her job duties.

68. In or about January 2009, defendant's employee Orlando did hug Rivera in a suggestive manner.

69. Plaintiff Rivera did advise Orlando that his illegal and harassing advances and physical contact were unwelcome, and pushed him away.

70. As a result of the illegal and harassing acts of Orlando, plaintiff Rivera became severely uncomfortable and embarrassed.

71. On or about February 7, 2009, after plaintiff Jackson reported Orlando's harassing behavior to several of defendant's managers, Orlando approached plaintiff Rivera from behind and deliberately rubbed his body against Rivera's buttocks.

72. As a result of Orlando's illegal behavior on or about February 7, 2009, plaintiff Rivera demanded that he was to stop touching her and to leave her alone.

73. Defendant's employee Orlando deliberately ignored Rivera's requests to leave her alone.

74. Plaintiff Rivera grew increasingly uncomfortable, embarrassed, humiliated, and afraid of further harassing incidents while at work.

75. On or about February 7, 2009, plaintiff Rivera also witnessed Orlando grab the buttocks of plaintiff Jackson.

76. Immediately following the aforementioned illegal acts of Orlando, plaintiff Rivera reported and complained to Assistant Manager Steve about the continuous embarrassing and harassing behavior that she and other employees were subjected to while on the job.

77. Plaintiff Rivera was only told by Assistant Manager Steve that management was "working on it."

78. Defendant's employee Orlando was not terminated until April 12, 2009.

79.    Upon information and belief, defendant ignored the complaints of plaintiff Rivera and took no immediate steps to investigate Rivera's complaint and reports.

80.    Upon information and belief, defendant took no action in preventing Orlando from working in proximity to plaintiff Rivera.

81.    Upon information and belief, defendant took no steps to put an immediate halt to the campaign of discriminatory hostility, harassment, humiliation, bullying and terrorizing conduct against plaintiff Rivera.

82.    Plaintiff Rivera grew fearful for her safety and further harassing incidents while defendant permitted Orlando to continue to work in proximity of Rivera.

83.    Plaintiff Barnes has been employed by defendant as an overnight stock clerk since May 2008.

84.    Plaintiff Barnes works at defendant's location of business in Monticello, New York.

85.    Throughout plaintiff Barnes' tenure of employment, she has witnessed several incidents of sexual harassment by defendant's former employee, Orlando.

86.    Plaintiff Barnes was aware of the complaints made to management by plaintiffs Jackson and Rivera.

87.    Plaintiff Barnes was told by plaintiff Jackson that defendant's employee, Orlando, sexually harassed her, both physically and verbally.

88.    Upon learning about the ongoing, continuous pattern of sexual harassment at defendant's place of business, plaintiff Barnes grew increasingly uncomfortable, embarrassed, humiliated, and afraid of further harassing incidents at Walmart.

89.     On several occasions, plaintiff Barnes complained to defendant's management about her fears relating to the ongoing barrage of disparaging comments and discriminatory treatment permitted of her co-workers.

90.     Throughout plaintiff Barnes's course of employment, she requested that immediate action be taken to prevent the continuous pattern of sexual harassment at defendant's place of business.

91.     Throughout plaintiff Barnes's course of employment, she protested to defendant that Orlando be prevented from working in proximity to herself, complaining that she could no longer tolerate working with Orlando, due to his demeaning, hostile, and illegal behavior constantly exhibited towards women.

92.     Despite plaintiff Barnes's repeated complaints and requests, defendant's management continually forced Barnes to work the same shits in close proximity to Orlando.

93.     Despite complaints of sexual harassment and inappropriate behavior by at least three employees, defendant did not take any immediate remedial action.

94.     Defendant did knowingly condone a perpetrator of sexual harassment to continue working with further incidents for several months.

95.     Upon information and belief, defendant acted consciously and deliberately to permit Walmart employees to violate the laws prohibiting discriminatory, hostile, and harassing conduct toward women with outright arrogance and impunity.

96.     As a result of defendant's failure to prevent continuous illegal sexual harassment, plaintiff Barnes suffered severe anxiety for her personal safety.

97.     Upon information and belief, since the firing of Orlando, there have been no policy changes at Walmart to protect employees from harassment or provide them with information about what constitutes sexual harassment.

98.     Plaintiff Lacey has been employed by defendant in the pharmacy department since September 2008.

99.     Plaintiff Lacey works at defendant's location of business in Monticello, New York.

100.    Plaintiff Lacey was initially hired by defendant as a pharmacy assistant, and was upgraded to pharmacist upon her passage of the New York State licensing examinations.

101.    Since the beginning of her employment, plaintiff Lacey has been subject to the harassing and inappropriate behavior of defendant's employee Joe (last name unknown), a pharmacist at defendant's place of business.

102.    On numerous occasions during Lacey's employment, defendant's employee, Joe, has made inappropriate lewd, sexual comments to Lacey, has positioned himself offensively close to Lacey, and has repeatedly brushed his hands and arms against Lacey's body in a sexual manner.

103.    A former Walmart employee, Nakiba (last name unknown), witnessed Joe's harassing and illegal behavior on at least one occasion, and advised Joe to leave plaintiff Lacey alone.

104.    As a result of the illegal actions by defendant's employee Joe, plaintiff Lacey became severely fearful, uncomfortable, and embarrassed, concerned that another harassing incident was imminent.

105.    Prior to going out on maternity leave in July 2009, plaintiff Lacey did report and complain about Joe's illegal behavior to defendant's district human resource representative.

106.    Defendant's human resource representative did deliberately ignore Lacey's complaints, and did refuse to investigate Lacey's reports.

107.    As a result of the representative's refusal to prevent ongoing sexual harassment, plaintiff Lacey called defendant's supervisor for the human resources department to report and complain about Joe's illegal behavior.

108.    Defendant's supervisor advised plaintiff Lacey that the district human resource representative would call Lacey and instruct her how to make a formal complaint.

109.    Defendant's district human resource representative eventually called plaintiff Lacey, and instructed Lacey to fax in a written report and present it to the managers on site at defendant's store.

110.    Despite plaintiff Lacey's compliance with defendant's formal reporting requirements, defendant's managers Rob and Harley (last names unknown) initially ignored the report and told Lacey to rewrite it for defendant's "red book" and to provide a list of witnesses.

111.    Upon plaintiff Lacey's further compliance with defendant's complaint procedures, Lacey was only told by defendant's managers to refrain from discussing the matter with other Walmart employees.

112.    Upon information and belief, defendant took no steps to investigate plaintiff Lacey's complaints and reports.

113.    Upon information and belief, defendant took no action in preventing Joe from continuing to work in the pharmacy department.

114.    Upon information and belief, defendant took no steps to put an immediate halt to the campaign of discriminatory hostility, harassment, humiliation, bullying and terrorizing conduct against plaintiff Lacey.

115.    Immediately after reporting the aforementioned illegal behavior to defendant's management, plaintiff Lacey went on maternity leave.

116.    Plaintiff Lacey continues to shop at defendant's location of business in Monticello, New York while she is on maternity leave.

117.    In September 2008, two months after her initial complaint, plaintiff Lacey saw that defendant's employee Joe remains in the pharmacy department.

118.    Upon information and belief, defendant's employee Joe is still employed by Walmart.

119.    Upon returning to the pharmacy from maternity leave, despite defendant management being aware of the illegal acts of sexual harassment, plaintiff Lacey will be required to work shifts with the offending employee, Joe, and work in close proximity to him.

120.    Plaintiff Lacey is afraid of further harassing incidents upon her return to work at defendant's place of business.

121.    As a result of defendant's failure to prevent continuous illegal sexual harassment following several complaints by numerous employees, plaintiff Lacey has suffered severe anxiety for her personal safety.

122.    Plaintiff Anthony was employed by defendant as a cashier from 2001 through 2003, and again from 2003 through May 2007, and was fully capable of performing the duties assigned to her by defendant.

123.    Plaintiff Anthony worked at defendant's location of business in Monticello, New York.

124.    Throughout her course of employment between 2003 and May 2007, plaintiff Anthony was subjected to verbal sexual advances by defendant's employee, Joe.

125.    As a result of the illegal actions by defendant's employee Joe, plaintiff Anthony became severely fearful, uncomfortable, and embarrassed, concerned that other harassing incidents were imminent.

126.    On several occasions, plaintiff Anthony reported and complained to defendant's management about Joe's inappropriate and illegal harassment, requesting that Joe be prevented from working in close proximity to Anthony.

127.    Despite plaintiff Anthony's numerous complaints, management routinely dismissed the reports of discrimination, and refused to take any action to prevent further acts of sexual harassment.

128.    Upon information and belief, defendant took no steps to investigate plaintiff Anthony's complaints and reports.

129.    Upon information and belief, defendant took no action in preventing Joe from working in close proximity to plaintiff Anthony.

130.    After attempting to make several complaints to defendant management, plaintiff Anthony learned that warehousemen employed by defendant were running a "pool" about who could have sexual relations with plaintiff Anthony.

131.    Plaintiff Anthony again reported and complained about the pervasive problem of sexual harassment to defendant management, detailing the facts about the "pool."

132.    Upon information and belief, defendant continued to ignore plaintiff Anthony's complaints, taking no action to remedy the routine of sexual harassment at Walmart.

133.    Upon information and belief, defendant took no steps to put an immediate halt to the campaign of discriminatory hostility, harassment, humiliation, bullying and terrorizing conduct against plaintiff Anthony.

134.    Defendant has knowingly condoned a perpetrator of sexual harassment to continue working despite further illegal incidents.

135.    As a result of the ongoing pattern of sexual harassment at defendant's place of business, plaintiff Anthony grew increasingly uncomfortable, embarrassed, humiliated, and afraid of further harassing incidents at Walmart.

136.    Throughout plaintiff Anthony's course of employment, she also was witness to several incidents of sexual harassment by cashiers, stock clerks, and other warehousemen against other female employees.

137.    On several occasions, plaintiff Anthony also complained to defendant's management about her severe anxiety and fears relating to the ongoing barrage of disparaging comments and discriminatory treatment permitted of her co-workers.

138.    Despite plaintiff Anthony's repeated complaints and requests, defendant refused to prevent the continuous pattern of sexual harassment.

139.    As a result of the continuous illegal harassing behavior suffered by Anthony, she was forced to take an official thirty-day leave of absence from work, which was approved by defendant's management.

140.     Despite plaintiff Anthony's compliance with Walmart procedures and her performance of all duties requested of her, defendant wrongfully terminated Anthony's employment no later than one week after her return from the approved leave of absence.

141.     At all times while employed by defendant, Anthony performed her job in a diligent, responsible and competent manner without any allegations of misconduct, yet defendant claimed Anthony was fired for excessive tardiness.

142.     Defendant's stated reason for firing Anthony was mere pretext for sex discrimination.

143.     Upon information and belief, defendant's sole reason for terminating Anthony's employment was deliberate retaliation against her for repeated protests and complaints of discriminatory and harassing conduct exhibited towards her.

144.     Upon Anthony's termination, defendant did refuse to compensate her for remaining sick time and personal days on the books.

145.     Sexual harassment continues to be a pervasive problem throughout Walmart.

146.     Upon information and belief, Walmart managers, including Sam, Andre, and Rob Spark, pass around and engage in unwelcome sexual contact with several younger associates, including a former employee, Carrie (last name unknown).

147.     Upon information and belief, following a brief mention about appropriate behavior and dress codes during initial employee orientation, at no time does Walmart management address employees as a group concerning sexual harassment, appropriate behavior, or what constitutes inappropriate conversation or touching.

148.     Upon information and belief, during employment at Walmart, each employee is required to complete a computerized test about company policy including dress code, attendance, and sexual harassment only **ONCE** during the term of employment.

149.     Upon information and belief, Walmart management acts consciously and in consort to permit violations of laws prohibiting discriminatory, hostile, harassing, and retaliatory conduct toward women with outright arrogance and impunity.

150.     Since at least 2003, Walmart did and continues to engage in an ongoing, continuing practice and pattern of sex discrimination against a broad class of women so severe and pervasive in that it drastically alters plaintiffs' terms, conditions, and privileges of employment.

151.     Since at least 2003, Walmart did and continues to permit similar, related illegal incidents of sex discrimination to go unresolved for so long as to amount to a continuing discriminatory policy and/or practice of sexual harassment and hostile work environment that creates an abusive working environment.

152.     Since at least 2003, defendant has permeated the workplace with discriminatory intimidation, ridicule and insult, so as to unreasonably interfere with plaintiffs' work performance.


FIRST CLAIM FOR RELIEF

(Defendant's Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

Prohibition Against Sexual Harassment)

153.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 152 of this Complaint with the same force and effect as if fully set forth herein.

154.    By virtue of the foregoing conduct, defendant has treated plaintiffs in an illegal discriminatory manner in violation of plaintiffs' rights under Title VII.

155.    By virtue of the foregoing conduct, plaintiffs have been sexually harassed in violation of Title VII, and particularly 42 U.S.C. Section 2000e-2(a)(1), which makes it unlawful for an employer "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex."

156.    As a proximate result of defendant's sex discrimination against plaintiffs, plaintiffs have suffered and continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

157.    As a further proximate result of defendant's actions, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name and reputation.

158.    As a further proximate result of defendants' actions, plaintiffs have suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, emotional pain and suffering, and other incidental and consequential damages and expenses.

159.    The conduct of defendants in violation of Title VII is outrageous and malicious, is intended to injure plaintiffs, and is done with reckless indifference to plaintiffs' protected civil rights, entitling plaintiffs to an award of punitive damages.

160.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of Title VII, for lost back pay, front pay, bonuses, interest, stock options, restored benefits, pension contribution, reinstatement, all compensatory damages, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest as well as

punitive damages and civil penalties to the extent allowed under Title VII, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Defendant's Violation of the State Human Rights Law Prohibition Against Sexual Harassment)

161.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 160 of this Complaint with the same force and effect as if fully set forth herein.

162.    By virtue of the foregoing, defendant has treated plaintiffs in an illegal discriminatory manner in violation of plaintiffs' rights under the New York State Human Rights Law.

163.    By virtue of the foregoing conduct, plaintiffs have been sexually harassed in violation of NYSHRL, and particularly N.Y. Exec. Law § 296 (1) (a), which makes it unlawful "[f]or an employer…because of an individual's…sex…to refuse to hire or to employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

164.    As a proximate result of defendant's sex discrimination against plaintiffs, plaintiffs have suffered and continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

165.    As a further proximate result of defendant's actions, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name and reputation.

166.    As a further proximate result of defendants' actions, plaintiffs have suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, emotional pain and suffering, and other incidental and consequential damages and expenses.

167.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of the NYSHRL, for lost back pay, front pay, bonuses, interest, stock options, restored benefits, pension contribution, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest and civil penalties to the extent allowed under the NYSHRL, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Defendant's Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Prohibition Against Hostile Work Environment)

168.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 167 of this Complaint with the same force and effect as if fully set forth herein.

169.    Defendant discriminated against plaintiffs by subjecting them to a hostile work environment based on sexual harassment in violation of Title VII's prohibition against discrimination in the workplace.

170.    The hostile work environment created and maintained by defendant and their agents/employees equally was part and parcel of a policy of the defendant and their agents to perpetuate a hostile work environment for female employees, specifically the plaintiffs, with regard to the terms and conditions of their employment, in violation of Title VII's prohibition of a hostile work environment based on sexual harassment.

171.    At all times relevant to this Complaint, defendant was aware of the prohibitions against creating and maintaining a hostile work environment based on sexual harassment, but nonetheless intentionally created, maintained, and failed to remedy a hostile work environment in the workplace based on sexual harassment.

172.    As a further proximate result of defendant's actions, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name and reputation.

173.    As a further proximate result of defendants' actions, plaintiffs have suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, emotional pain and suffering, and other incidental and consequential damages and expenses.

174.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of Title VII, for lost back pay, front pay, bonuses, interest, stock options, restored benefits, pension contribution, reinstatement, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest as well as punitive damages and civil penalties to the extent allowed under Title VII, in an amount to be determined at trial.

175.    Defendant's conduct was purposeful, deliberate, intentional and done with reckless disregard for the rights and welfare of the plaintiffs.

176.    By virtue of the foregoing, plaintiff is also entitled to recover punitive damages.

## FOURTH CLAIM FOR RELIEF
### (Defendant's Violation of the State Human Rights Law's
### Prohibition Against Hostile Work Environment)

177.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 176 of this Complaint with the same force and effect as if fully set forth herein.

178.    Defendant discriminated against plaintiffs by subjecting them to a hostile work environment based on sexual harassment in violation of the State Human Rights Law's prohibition against discrimination in the workplace.

179.    Defendant intentionally created and maintained a hostile work environment based on sexual harassment, constituting a violation of the NYSHRL prohibition against discrimination in the workplace based on sexual harassment.

180.    The hostile work environment created and maintained by defendant and their agents/employees equally was part and parcel of a policy of the defendant and their agents to perpetuate a hostile work environment for female employees, specifically, the plaintiffs, with regard to the terms and conditions of their employment, in violation of the NYSHRL prohibition of a hostile work environment based on sexual harassment.

181.    As a further proximate result of defendant's actions, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name and reputation.

182.    As a further proximate result of defendants' actions, plaintiffs have suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, emotional pain and suffering, and other incidental and consequential damages and expenses.

183.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of the NYSHRL, for lost back pay, front pay, bonuses, interest, stock options, restored benefits, pension contribution, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and

anguish, attorney's fees, expert witness fees, court costs, disbursements, interest and civil penalties to the extent allowed under the NYSHRL, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Defendant's Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Prohibition Against Retaliation

184.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 183 of this Complaint with the same force and effect as if fully set forth herein.

185.    Defendant retaliated against plaintiffs when they acted to raise and enforce their lawful rights on their own behalf and on behalf of other employees within defendant's company and objected to the discrimination based on sexual harassment and hostile work environment, to which they and other employees were subjected, in violation of Title VII's prohibition against retaliation, and particularly 42 U.S.C. § 2000e-3(a), which makes it unlawful for an employer to "discriminate against any of his employees" because that individual "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."

186.    The retaliatory acts on the part of the defendant and their agents/employees were part and parcel of a policy of the defendant and their agents to perpetuate sexual harassment and hostile work environment, and to retaliate against plaintiffs for resisting, opposing, defying and standing up to such improper and illegal behavior.

187.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of Title VII, for lost back pay, front pay, bonuses, interest, stock options,

restored benefits, pension contribution, reinstatement, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest as well as punitive damages and civil penalties to the extent allowed under Title VII, in an amount to be determined at trial.

188.    By virtue of the foregoing, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

189.    Defendant's conduct was outrageous; was done in a purposeful and intentional manner; was done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure plaintiffs; was done with an improper and evil motive, amounting to malice and spite; and was done in conscious disregard of plaintiffs' rights.

190.    By virtue of the foregoing, plaintiffs are entitled to receive punitive damages.

### SIXTH CLAIM FOR RELIEF
#### (Defendant's Violation of the State Human Rights Law's
#### Prohibition Against Retaliation)

191.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 190 of this Complaint with the same force and effect as if fully set forth herein.

192.    Defendant retaliated against plaintiffs when they acted to raise and enforce her lawful rights on her own behalf and on behalf of other employees within defendant's company and objected to the discrimination based on sexual harassment and hostile work environment, to which they and other employees were subjected, in violation of the State Human Rights Law's

prohibition against retaliation, and particularly N.Y. Exec. Law § 296 (1) (e), which makes it unlawful "[f]or an employer…to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden under [the NYSHRL] or because he or she has filed a complaint, testified or assisted in any proceeding under [the NYSHRL]."

193.    The retaliatory acts on the part of the defendant and their agents/employees were part and parcel of a policy of the defendant and their agents to perpetuate sexual harassment and hostile work environment, and to retaliate against plaintiffs for resisting, opposing, defying and standing up to such improper and illegal behavior.

194.    By virtue of the foregoing, plaintiffs have suffered damages, due to defendant's willful violation of the NYSHRL, for lost back pay, front pay, bonuses, interest, stock options, restored benefits, pension contribution, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest and civil penalties to the extent allowed under the NYSHRL, in an amount to be determined at trial.

195.    By virtue of the foregoing, plaintiffs have suffered and continue to suffer impairment and damage to plaintiffs' good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

**WHEREFORE**, plaintiffs demand judgment as follows:

(1)    On the FIRST, THIRD, AND FIFTH CLAIMS FOR RELIEF, for a ruling that defendant treated plaintiffs in an illegal discriminatory manner in violation of Title VII; for damages for lost back pay, front pay, bonuses, interest, restored benefits, pension contribution, all compensatory damages, reinstatement, including that not limited to health benefits, emotional

pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest as well as punitive damages and civil penalties to the extent allowed under Title VII, in an amount to be determined at trial;

(2)    On the SECOND, FOURTH, AND SIXTH CLAIMS FOR RELIEF, for a ruling that defendant treated plaintiffs in an illegal discriminatory manner in violation of the NYSHRL; for damages for lost back pay, front pay, bonuses, interest, restored benefits, pension contribution, all compensatory damages, reinstatement, including that not limited to health benefits, emotional pain and suffering, humiliation, mental pain and anguish, attorney's fees, expert witness fees, court costs, disbursements, interest and civil penalties to the extent allowed under the NYSHRL, in an amount to be determined at trial;

(3)    On the FIRST, THIRD, AND FIFTH CLAIMS FOR RELIEF, punitive damages in an amount no less than Twenty Million Dollars ($20,000,000.00);

(4)    On the FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS FOR RELIEF, an order enjoining defendant from engaging in the future in the wrongful practices alleged herein;

(5)    On the FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS FOR RELIEF, and order prohibiting defendant from continuing and/or maintaining the policy or practice of permitting sexual harassment;

(6)     On the FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS FOR RELIEF, an award of reasonable attorneys' fees and the costs of this action; and

(7)     Such other and further relief as this Court finds just, appropriate and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: New York, New York
      January 21, 2010

Yours, etc.,

CORY ROSENBAUM (CR 7529)
Rosenbaum Faria, LLP
Attorneys for Plaintiffs
Eleven Penn Plaza, Fifth Floor
New York, New York 10001
(212) 732-7922

## ATTORNEY'S VERIFICATION

The undersigned, an attorney duly admitted to practice in the Southern District of New York, hereby affirms as follows:

The deponent is the attorney of record for the plaintiffs in the within action; the deponent has read the annexed COMPLAINT and knows the contents thereof; that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters deponent believes them to be true.

Deponent further states that the reason this Verification is made by deponent, and not by plaintiffs, is that plaintiffs reside in a county other that that in which deponent maintains his office.

The grounds for deponent's belief as to all matters not stated upon his knowledge are based upon reports, documents, records, notes and memoranda contained in my file.

Dated: New York, New York
      January 21, 2010

                                              Cory Rosenbaum



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112·
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

**BY US MAIL**

Ms. Melissa Jackson
c/o Cory J. Rosenbaum, Esq.
Rosenbaum Faria, LLP
300 Park Avenue
New York, NY 10022

**RE:**     **Melissa Jackson v. Wal-Mart**
            **EEOC Charge No.  520-2009-03900**

Dear Ms. Jackson:

This office is in receipt of your request for a *Notice of Right to Sue* on the above referenced charge.

The Commission has reviewed all of the circumstances of this case and we are issuing you the requested *Notice of Right to Sue*.

Sincerely,

On Behalf of the Commission:

_____                    OCT 2 8 2009

Spencer H. Lewis, Jr.                         _____
*District Director*                           Date
*New York District Office*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

**BY US MAIL**

Ms. Elizabeth Rivera
c/o Cory J. Rosenbaum, Esq.
Rosenbaum Faria, LLP
300 Park Avenue
New York, NY 10022

**RE:**　　**Elizabeth Rivera v. Wal-Mart**
　　　　　**EEOC Charge No. 520-2009-03900**

Dear Ms. Rivera:

This office is in receipt of your request for a *Notice of Right to Sue* on the above referenced charge.

The Commission has reviewed all of the circumstances of this case and we are issuing you the requested *Notice of Right to Sue*.

Sincerely,

On Behalf of the Commission:

_____
Spencer H. Lewis, Jr.
*District Director*
*New York District Office*

OCT 2 8 2009
_____
Date

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Elizabeth Rivera<br>12 Terry Lane, Apt. 99<br>Monticello, NY 12701 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2009-03900 | Maritza Rondon-Velazquez,<br>Investigator | (212) 336-3678 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
Director

OCT 2 8 2009

*(Date Mailed)*

Enclosures(s)

cc:  **Michael S. Hanan, Esq.**
**Fox Rothschild LLP**
**P.O. Box 5231**
**Princeton, NJ 08543-2311**

Cory J. Rosenbaum, Esq.
Rosenbaum Faria, LLP
300 Park Avenue, Suite 1700
New York, NY 10022



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

**BY US MAIL**

Ms. Nanette Barnes
c/o Cory J. Rosenbaum, Esq.
Rosenbaum Faria, LLP
300 Park Avenue
New York, NY 10022

**RE:**        **Nanette Barnes v. Wal-Mart**
              **EEOC Charge No. 520-2009-03903**

Dear Ms. Barnes:

This office is in receipt of your request for a *Notice of Right to Sue* on the above referenced charge.

The Commission has reviewed all of the circumstances of this case and we are issuing you the requested *Notice of Right to Sue*.

Sincerely,

On Behalf of the Commission:

_____
Spencer H. Lewis, Jr.
*District Director*
*New York District Office*

OCT 2 8 2009

_____
Date

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Nanette Barnes<br>29 York Avenue, Apt. 3<br>Monticello, NY 12701 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2009-03903 | Maritza Rondon-Velazquez,<br>Investigator | (212) 336-3678 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

OCT 2 8 2009

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**Director**

*(Date Mailed)*

cc: **Michael S. Hanan, Esq.**
**Fox Rothschild LLP**
**P.O. Box 5231**
**Princeton, NJ 08543-2311**

**Cory J. Rosenbaum, Esq.**
**Rosenbaum Faria, LLP**
**300 Park Avenue, Suite 1700**
**New York, NY 10022**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Samantha Lacey
1097 State Route 52, **Unit 1**
Livingston Manor, NY 12758

**Re:** *EEOC Charge No. 520-2010-00149*
*Samantha Lacey v. Walmart*

Dear Ms. Lacey:

This office is in receipt of your request for a *Notice of Right to Sue* on the above-referenced charge.

Ordinarily, a charging party or his/her counsel is not entitled to receive a *Notice of Right to Sue* upon request until the charge has been pending with the EEOC for at least 180 days. However, an early *Notice of Right to Sue* is authorized by 29 C.F.R. § 1601.28(a)(2) if the Director determines that the Commission will not be able to complete its administrative process within 180 days of the date the charge was filed.

After reviewing the circumstances of this charge, we have determined that issuing you the requested Notice of Right to Sue is warranted at this time, given our current workload and the extent of the additional information required to complete this investigation.

If you have any questions, please call Roxanne Zygmund, Investigator at (212) 336-3764.

Sincerely,

Spencer H. Lewis, Jr.
District Director

December 29 2009
Date

cc:
Cory J. Rosenbaum, Esq..
ROSENBAUM FARIA, LLP
11 Penn Plaza, Fifth Floor
New York, NY 10001

Jeff W. Davis, Associate General Counsel
WALMART
702 S.W. 8th Street
Employment Litigation
Bentonville, AR 72716

File

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Samantha Lacey<br>1097 State Route 52<br>Unit 1<br>Livingston Manor, NY 12758 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2010-00149 | Roxanne Zygmund,<br>Investigator | (212) 336-3764 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**Spencer H. Lewis, Jr.,**
**Director**

December 29, 2009
*(Date Mailed)*

Enclosures(s)

cc: | Jeff W. Davis
Assoc. Gen. Counsel
WAL-MART
702 S.W. 8th Street
Employment Litigation
Bentonville, AR 72716 | Cory J. Rosenbaum, Esq.
11 Penn Plaza, Fifth Floor
New York, NY 10001 |